UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| QUODAVIS SIMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:16-CV-240 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Quodavis Sims seeks review of the decision of Defendant Nancy Berryhill, Deputy Commissioner of Operations in the Social Security Administration (SSA), denying his application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act.[1] (ECF No. 1). Because the Court finds that substantial evidence supports Defendant's decision denying Social Security benefits to Plaintiff, the Court affirms the denial.

*I. Background and Procedural History*

On June 8, 2011, Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income claiming that he was disabled as of December 21, 1992, his date of birth, due to allegations of "slow learner, attention span problem, and comprehension." (Tr. 224-227, 258). The SSA denied Plaintiff's claims, and he filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. 124). The SSA granted Plaintiff's request for review and conducted a hearing on March 26, 2013. (Tr. 171). In a decision dated July 2, 2013, the ALJ affirmed the SSA's denial of benefits. (Tr. 102).

---
[1] The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 9).

Plaintiff subsequently filed a request for review of the ALJ's decision, and the SSA Appeals Council granted Plaintiff's request. (Tr. 178-79). In February 2015, a different ALJ conducted a hearing and found that Plaintiff had not been under a disability, as defined in the Social Security Act, through February 19, 2015, the date of decision. (Tr. 22). In August 2016, the SSA Appeals Council denied Plaintiff's request for review. (Tr. 1-5). Plaintiff has exhausted all administrative remedies, and the ALJ's 2015 decision stands as Defendant's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II. The Administrative Proceeding

### A. Testimony at 2015 Hearing

Plaintiff appeared with counsel at the administrative hearing in February 2015. (Tr. 31). He testified that he was 22 years old, a high school graduate, and lived with his godparents. (Tr. 37, 38, 42). Plaintiff had no work experience. (Tr. 44). He spent his time playing basketball, working out, or watching television. (Tr. 47-49).

Plaintiff testified that he could read "pretty well." (Tr. 39). Plaintiff stated that he repeated the third grade and took "special resource" classes in school. (Tr. 38). He did not have a driver's license because he failed the test. (Tr. 40-41). Plaintiff's godparents helped him fill out the Social Security forms. (Tr. 41).

Plaintiff stated that his main problem was his low IQ and that he was a slow learner. He testified also that he had "trouble paying attention" and "trouble with his memory," and he claimed he often forgot what he was doing or where he was. (Tr. 46). Conversely, Plaintiff confirmed that he was able to follow instructions to complete some household chores. (Tr. 46-47). Plaintiff also testified that "if someone gave [him] a road map and said here's the way to get to Cape Girardeau, Missouri or St. Louis," he might be able to travel from his home in Gobler,

Missouri to Cape Girardeau or St. Louis (Tr. 49). Additionally, Plaintiff stated that he could occasionally figure out how to "play cards or play [M]onopoly." (Tr. 51).

### B. Relevant Records

Three different professionals administered IQ tests to Plaintiff. In April 2006, Plaintiff received an IQ score of 77 on the Wechsler Intelligence Scale for Children – Fourth Edition (WISC-IV), placing him in the borderline range of intellectual functioning. (Tr. 334). On another WISC-IV examination, administered in March 2009, Plaintiff received the same score. (Tr. 335-37). In October 2014, Plaintiff took his first Wechsler Adult Intelligence Scale—IV (WAIS-IV) and received an IQ score of 68. (Tr. 426). The professional who administered the test, non-treating psychologist Dr. Paul Rexroat, believed Plaintiff's scores were an "accurate estimate of [Plaintiff's] current level of intellectual functioning" but also acknowledged that Plaintiff's IQ score "may not be the best way to summarize his unique combination of intellectual abilities." (Tr. 426-27).

A Brown's Attention Deficit Disorder Scales for Children test, administered by a school counselor in March 2009, revealed Plaintiff likely suffered from ADD. (Tr. 330-32). Later that month, a doctor confirmed the diagnosis. (Tr. 342). In July 2011, a different doctor diagnosed Plaintiff with Attention Deficit/Hyperactivity Disorder (ADHD), despite noting that Plaintiff's thought process was "spontaneous, uninhibited, logical, and organized." (Tr. 433). In his report, the doctor stated that Plaintiff was "alert and oriented to time, person, place" and could "understand and remember instruction, but [had] some difficulty sustaining concentration and persistence in tasks." (Id.). The record also reflects Plaintiff reported past improvement with ADHD medication, but he had not taken any in eight years.

In April 2013, Dr. Rexroat, performed a consultative psychological examination, which revealed Plaintiff's immediate, delayed, recent and remote memory were "good." (Tr. 402). Dr.

3

Rexroat, however, noted Plaintiff could not remember what he ate for dinner the night before when discussing his recent memory. (Tr. 403). Plaintiff's memory functioning was in the "borderline range." (Tr. 404). Even so, Plaintiff was able to understand and remember simple instructions and could sustain concentration, persistence, and pace with simple tasks. (Id.).

When Dr. Rexroat examined Plaintiff in October 2014, he noted Plaintiff's ability to understand instructions and maintain interest and effort when completing assessment tasks. (Tr. 424). He was able to recall what he ate for breakfast that day and dinner the evening before, current and past presidents, and large cities in the United States. However, when Dr. Rexroat completed Plaintiff's "Medical Source Statement of Ability to Do Work Related Activities (Mental)" (MSS), he noted that Plaintiff's low IQ limited his ability to understand, remember, and carry out complex instructions and/or make judgments on complex work-related decisions. (Tr. 421, 429).

### III.  *Standard for Determining Disability under the Act*

Eligibility for disability benefits under the Act requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the ALJ engages in a five-step evaluation process. See 20 C.F.R. § 404.1520. Those steps require a claimant to show that he or she: (1) is

not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities; or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) has impairments that prevent him or her from doing any other work. Id.

## IV.    The ALJ's Determination

The ALJ determined Plaintiff: (1) had not engaged in substantial gainful activity since December 21, 1992; (2) had the severe impairments of borderline intellectual functioning and ADHD; and (3) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14). The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but "[Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely credible." (Tr. 19).

At step three of the process, the ALJ considered whether Plaintiff's impairment or combination of impairments met the severity of Listing 12.05C for intellectual disability. In regard to the IQ scale requirement, the ALJ explained: "[T]he claimant's [2014] IQ test may not be the best way to summarize his unique combination of intellectual abilities." (Tr. 16). He also noted that Plaintiff's verbal reasoning abilities were "significantly weaker than his nonverbal reasoning abilities and when compared with the overall sample, it was not consistent." (Id.). Additionally, the ALJ found: "Although the claimant has exhibited a lower IQ score, in high school, the claimant's level of intellectual functioning was rated as falling within the average range of ability." (Tr. 17). The ALJ reasoned:

> [T]he claimant was able to obtain his high school diploma, further implying the inert [sic] ability to function in spite of his measurably lowered IQ. In fact, the claimant was able to

> receive numerous A's and B's while in school, thus implying the [inert] ability to understand at a higher level than this lower IQ score would support.

(Id.) (alteration in original). The ALJ concluded that Plaintiff's "IQ score is not consistent with [his] education records, which indicated a higher intellectual capability," so "the evidence as a whole better supports a finding that [Plaintiff] does not have a valid verbal, performance, or full scale IQ below 70 and that his actual cognitive levels were more consistent with the borderline numbers from his childhood (age 16) testing." (Id.).

The ALJ concluded that Plaintiff had the residual functional capacity (RFC) to "perform a full range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] is limited to simple, repetitive and routine tasks." (Tr. 17, 21). Finally, the ALJ determined that Plaintiff retained the RFC to perform jobs existing in significant numbers in the national economy, and was therefore not disabled within the meaning of the Act. (Tr. 21).

## V. *Standard of Judicial Review*

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Boerst v. Shalala, 2 F. 3d 249, 250 (8th Cir. 1993)). To determine whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, a court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the finding and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

## VI. *Discussion*

Plaintiff claims that substantial evidence does not support the ALJ's determination that Plaintiff did not meet or medically equal the criteria for Listing 12.05C. More specifically, Plaintiff contends that the ALJ erred in: (1) relying on an earlier, higher IQ score rather than Plaintiff's most recent, lower IQ score; and (2) failing to adequately explain his decision to favor the higher IQ score over the lower one. (Tr. 14, 16, 312). Defendant counters that the ALJ "properly addressed the record as a whole, and gave good reasons why he did not consider [the lower] IQ [score] valid." See Def.'s Br. at 4.

A claimant meets the Listing 12.05C requirements if he "show[s]: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." Quarles v. Berryhill, No. 4:16 CV 1910 (JMB), 2018 WL 339416, at *7 (E.D. Mo. Jan. 9, 2018) (quoting Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006)). Additionally, "the claimant is required to demonstrate that she suffered "deficits in adaptive functioning" and that those deficits "initially manifest during the developmental period [before age 22]." Id. (quoting Cheatum v. Astrue, 388 Fed.Appx. 574, 576 (8th Cir. 2010); See also 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. "To qualify for disability under a listing, a claimant

carries the burden of establishing that her condition meets or equals all specified medical criteria." Quarles, 2018 WL 339416, at *7 (quoting McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011).

In this case, IQ tests administered in 2006, 2009, and 2014 revealed IQ scores of 77, 77, and 68, respectively. (Tr. 328, 335-37, 424, 426-28). Dr. Rexroat administered the tests in 2009 and 2014. In regard to the 2014 test, found that Plaintiff's IQ score might not be the best measurement of his intellectual capabilities, and the ALJ, after reviewing the entire record, agreed. An ALJ "is not required to accept a claimant's IQ scores…and may reject scores that are inconsistent with the record" because "test scores of this sort should be examined to assure consistency with daily activity behavior." McKinney v. Colvin, 973 F. Supp.2d 1011, 1026 (E.D. Mo. 2013) (quoting Miles v. Barnhart, 374 F.3d 694, 699 (8th Cir. 2004) (alteration in original, internal quotation omitted)).

Plaintiff maintains that the ALJ "tried to create invalidating inconsistencies within the 2014 testing." (ECF No. 20). However, Plaintiff mischaracterizes the ALJ's finding. The ALJ did not find inconsistencies within the testing, but rather between Plaintiff's IQ scores and his daily activities and educational achievements. Plaintiff's educational records reflect that he did not fail any classes after third grade, received several A's and B's in core subjects, and graduated high school in four years. Additionally, Plaintiff's special education teacher of six years, noted that Plaintiff had a "slight problem" acquiring and using information and had no problems attending to and completing tasks. (Tr. 321-22).

In support of the argument that "the ALJ is required to use the lower scores when two or more IQ tests are given," Plaintiff cites Muncy v. Alfel, 247 F.3d 728, 733 (8th Cir. 2001). Pl.'s Br. at 12. Plaintiff's reliance on Muncy is misplaced. In Muncy, the plaintiff challenged the ALJ's decision adopting without explanation the more recent, higher IQ score and rejecting the

8

lower, earlier one. Id. The Eighth Circuit remanded the matter "to resolve the twenty-five point discrepancy between the claimant's two IQ scores" and "enter specific findings detailing why [the plaintiff's] first IQ score should not be adopted as the controlling score." Id. at 735.

Unlike the ALJ in Muncy, the ALJ in this case explained his decision to adopt the earlier score. The ALJ reasoned that, based on Plaintiff's psychological evaluations and educational records, the IQ score of 77 more accurately reflected Plaintiff's intellectual abilities. Specifically, the ALJ noted that Plaintiff received numerous A's and B's in school and graduated high school. The ALJ also observed that Dr. Rexroat, the psychologist who administered the third IQ test, stated that the lower IQ score of 68 "may not be the best way to summarize his unique combination of intellectual abilities." (Tr. 426). Based on the above, the Court concludes that substantial evidence supported the ALJ's determination that Plaintiff's impairments neither met nor equaled those limitations set forth in Listing 12.05C.

## VII. Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports Defendant's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's final decision denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of September, 2018